Raffold Process Corporation and Rafton Laboratories, Inc. v. Commissioner.
Raffold Process Corp. v. Commissioner
Docket Nos. 2341, 2342.
United States Tax Court
1944 Tax Ct. Memo LEXIS 91; 3 T.C.M. (CCH) 1050; T.C.M. (RIA) 44324; October 6, 1944
*91 Robert C. McKay, Esq., 68 Devonshire St., Boston, Mass., for the petitioner. J. D. Durand, Esq., for the respondent. MELLOTT
Memorandum Opinion MELLOTT, Judge: The Commissioner determined the following deficiencies in tax for the year 1939: Raffold
Rafton
Process
Laborato-
Corporation
ries, Inc.
Income Tax
$ 616.52
$347.70
Declared value ex-
cess-profits tax
517.31
297.26
Personal holding
company surtax
3,476.25
Total
$4,610.08
$644.96
The sole issue is whether the indebtedness of the Raffold International Corporation to each of the petitioners was worthless when made the subject of a "composition agreement" under date of December 15, 1939, by which ten percentum of the amount owing to each was paid. The facts have been stipulated and are found accordingly. [The Facts] Petitioners and the Raffold International Corporation were organized on November 5, 1928, under the laws of the Commonwealth of Massachusetts, each with a capital stock of 500 shares of no par value. 498 shares of each corporation were issued to Harold R. Rafton. The shares of Rafton Laboratories, Inc., were issued in exchange for the assets of a chemical laboratory formerly operated *92 by Harold R. Rafton as an individual. The shares of the Raffold Process Corporation were issued in exchange for an assignment of all United States Patents, pending applications, and license agreements (having to do with the use of carbonate fillers in paper) then owned by Harold R. Rafton subject to a royalty of $2 per ton of carbonate filler used under the patents, payable to Harold R. Rafton. The shares of Rafton International Corporation were issued in exchange for an assignment of all foreign patents and pending applications (having to do with the use of carbonate fillers in paper) then owned by Harold R. Rafton. The other two shares of each corporation were issued to directors for cash. There have been no transfers of any of the stock of any of the corporations. The business of Rafton Laboratories, Inc., has been the operation of a laboratory specializing in problems arising from the use of carbonate fillers in paper. Substantially all of its income has been from fees charged Raffold Process Corporation and Raffold International Corporation for technical advice to these corporations and their licensees, maintaining an office, keeping their books and records, etc. The business *93 of Raffold Process Corporation has been licensing under United States patents on a royalty basis. The business of Raffold International Corporation prior to 1936 consisted of the ownership of a group of European patents and a group of Canadian patents. In 1936 the corporation secured one licensee under the Canadian patents, The Ontario Paper Company, Ltd., and collected royalties from this licensee in 1937, 1938 and 1939. No licensees were ever obtained under the European patents but active negotiations for their sale had been carried on prior to the unsettled conditions in Europe preceding World War II. In order to provide funds to pay annual fees and other charges required by the European governments to keep the patents alive, Harold R. Rafton advanced sums aggregating $9,000 to Raffold International Corporation at various times between the date of incorporation and December 31, 1934. The petitioners made similar advances from January 1, 1933, to December 31, 1938, as follows: Rafton
Raffold
Laborato-
Process
ries, Inc.
Corporation
1933
$1,000.00
1934
$1,000.00
500.00
1935
500.00
1,000.00
1936
2,000.00
1937
2,000.00
1938
1,000.00
Total
$3,500.00
$5,500.00
*94 In April of 1936, Raffold International Corporation entered into a licensing agreement with the Ontario Paper Company, Limited, of Canada, under the provisions of which the latter corporation acquired a license from Raffold International under patents and applications for letters patent of the Dominion of Canada owned by Raffold International and agreed to pay $1 for each ton of Alkaline Filler OTR manufactured or used under these patents or applications. The Raffold International Corporation received no income prior to January 1, 1937, under the license agreement. In 1937, 1938 and 1939, it received the following income for the use of Patent No. 339884 issued March 6, 1934, and had the following expenses: 1937
1938
1939
Gross Royalties
$3,436.11
$4,972.44
$5,328.60
Canadian Income
Tax Withheld
429.51
621.56
330.77
Collection Charges
3.88
35.93
104.04
$ 433.39
$ 657.49
$ 434.81
Net Royalties
$3,002.72
$4,314.95
$4,893.79
Expenses
Laboratory Fees
Paid to Rafton
Laboratories,
Inc.
$2,000.00
$3,250.00
$3,350.00
Depreciation of
Patents
73.44
36.98
94.42
Taxes
14.35
23.23
33.95
Travel
707.31
481.87
277.16
Miscellaneous
91.61
66.71
1.75
$2,886.71
$3,908.79
$3,757.28
Net Income
$ 116.01
$ 406.16
$1,136.51
Loss Claimed on
European
Patents
838.14
*95 During 1939, the Raffold International Corporation ceased paying the annual fees and other charges required by the European governments and the European patents were thereby forfeited. On October 13, 1939, Arthur M. Brooks, Vice President and a director of Raffold International Corporation, and a director of both petitioners, visited the plant of the Ontario Paper Company at Thorold, Ontario. He was told by the local manager of the plant that the latter was changing the point of the addition of carbonate filler to the mixers which would avoid the use of the patent under which it was paying royalty. He also observed workmen changing over the piping to avoid the use of the patents. On January 2, 1940, the Ontario Paper Company wrote the following letter to Raffold International Corporation: "We wish to advise you that as of October 16th, 1939 we commenced, and have since carried on, the practice of adding alkaline filler for our paper machine furnish [sic] at the mixers in the screen room. Under this condition, we have not made use of the practice under which we are licensed, and therefore, we propose to pay you only for that portion of our alkaline filler which was furnished by means *96 of the Fair pans on each of the paper machines. "This practice is not, necessarily, a permanent arrangement and it may well be that the practice will revert back to our previous procedure, but at the present time, we find it is absolutely necessary to control the carbonate content by furnishing it at the mixer. "We propose to maintain the Agreement in full force and effect and will make full returns as provided and payments of royalties as and when they may become payable." On December 15, 1939, Harold R. Rafton, Rafton Laboratories, Inc., and Raffold Process Corporation executed the following document: "We, the undersigned, creditors of the Raffold International Corporation of Andover, Massachusetts, hereby severally agree with the said debtor that on payment to us respectively of a composition of ten per cent (10%) on the amount of our respective claims against the said Raffold International Corporation as stated below, we will respectively accept same in full satisfaction of our several claims, and give the said debtor a release or other discharge from our several claims accordingly. Amount of
Claim
Payment
Harold R. Rafton
$ 9,000.00
$ 900.00
Rafton Laboratories,
Inc.
3,500.00
350.00
Raffold Process
Corp.
5,500.00
550.00
$18,000.00
$1,800.00"
*97 On December 31, 1939, the cost of the European patents on the books of the Raffold International Corporation was $17,038.14 and the depreciated cost of Canadian patents was $1,904.12. In closing its books for the year 1939, the Raffold Internationa. Corporation credited the amount by which its indebtedness was reduced by the "Composition Agreement" of December 15, 1939, to the cost of European patents and the balance amounting to $838.14 was charged off as a loss. The balance sheet of the Raffold International Corporation on December 31, 1939, after making these adjustments and paying 10 percent of its indebtedness was as follows: Assets
Liabilities
Cash
$ 37.50
Canadian Patents
2,158.96
Notes Payable
$ 400.00
Federal Taxes Pay-
able
37.30
Reserve for Depre-
ciation, Patents
254.84
Capital Stock
1,040.00
Surplus
464.18
$2,196.32
$2,196.32
Raffold International Corporation deducted a loss on its European patents on its tax return for the calendar year 1939 arrived at as follows: Cost of European Patents
$17,038.14
Income from Debt Cancella-
tion
16,200.00
Loss Claimed
$ 838.14 It reported a net income of $298.37 and paid a Federal income *98 tax of $37.30. Harold R Rafton charged off $8,100 on his personal return for the calendar year 1939 as a bad debt representing his $9,000 advance less $900 received in cash. Rafton Laboratories, Inc., charged off $3,150 on its books as a bad debt representing its $3,500 advance less $350 received in cash; and Raffold Process Corporation charged off $4,950 on its books as a bad debt representing its advance of $5,500 less $550 received in cash. After an examination by an internal revenue agent in 1941, the deduction of $8,100 on the personal return of Harold R. Rafton for 1939 was disallowed. Rafton protested. The case was settled, Rafton conceding the disallowance on the understanding that the cancellation of the indebtedness was to be treated as a contribution to the capital of the Raffold International Corporation. This reduced the income of Raffold International Corporation from debt cancellation and increased the loss on the European patents. As a result the corporation showed no taxable income and the tax of $37.30 paid for 1939 was refunded. On or about May 1, 1940, the Ontario Paper Company resumed the use of the patented process and Raffold International Corporation has *99 since received the following royalties and net income: 1940
1941
1942
Gross Royalties
$3,392.74
$3,993.81
$3,642.03
Canadian Income
Tax Withheld
476.74
599.08
546.31
Collection Charges
336.00
432.57
308.55
$ 812.74
$1,031.65
$ 854.86
Net Royalties
$2,580.00
$2,962.16
$2,787.17
Expenses
Laboratory Fees
Paid to Rafton
Laboratories,
Inc.
$2,000.00
$3,000.00
$2,600.00
Traveling Ex-
Penses
489.04
62.65
89.60
Depreciation of
Patents
131.92
138.36
142.64
Taxes
32.83
20.68
18.63
Miscellaneous
178.44
21.48
.76
$2,832.23
$3,243.17
$2,851.63
Net Income
(loss)
$ 252.23
$ 281.01
$ 64.46
On October 16, 1941, Ontario Paper Company wrote Raffold International Corporation requesting a reduction in royalty rate and Raffold International Corporation thereafter accepted a royalty rate of 75 cents per ton. The above statement is practically a verbatim copy of the stipulation. No additional evidence was offered by either party. In each notice of deficiency the amount claimed as a bad debt ($4,950 in the case of Raffold Process and $3,150 in the case of Rafton Laboratories) was disallowed. Therein it was stated: "The facts that the Raffold International *100 Corporation in 1939 had charged off its European patents and had received notice prior to December 15, 1939, that the Ontario Paper Co., Ltd., its sole licensee, had taken steps to manufacture in a manner not requiring the further payment of license fees, are held to be insufficient to establish that the indebtedness due you from such corporation, in excess of 10 percent thereof, was uncollectible when made the subject of a "composition agreement", dated December 15, 1939." Each petitioner contends that the difference between the amount of the advances made to Raffold International Corporation and the sum received as a result of the compromise agreement of December 15, 1939 is deductible as a bad debt. Section 23 (k) (1) I.R.C., as amended by Section 124 of the Revenue Act of 1942, specifically made retroactive to taxable years beginning after December 31, 1938, authorizes the deduction of "debts which become worthless within the taxable year." The question therefore is: Did the debts become worthless within the taxable year? Petitioners urge that the amounts claimed by each of them as bad debts were uncollectible irrespective of the composition agreement; that the only source *101 of income of the Raffold International Corporation prior to October 1939 was from its Canadian patents; that it had been able to secure but one licensee under these patents; and that when a director of both petitioners was told by the local manager of the sole licensee on October 13, 1939, that it was changing its process to avoid the use of the patent on which the royalty was paid, there remained for the petitioners only the bare hope that something might turn up in the future which would enable them to recover more than 10 percent of their advances, but that such bare hope did not constitute a sound reason for postponing the deduction of a loss that had clearly been sustained. We are not convinced that the indebtedness of Raffold International Corporation to petitioners under the presently stipulated facts became worthless within the taxable year. In reaching this conclusion we have given careful consideration to the fact that the only source of income of the corporation at that time was from its Canadian patents; that in October 1939 the sole licensee of those patents was rearranging its plant with a view to avoiding their use; and that the only other asset of Raffold International *102 was cash of $1,800. These appear to be the circumstances which caused petitioners to conclude that all they could hope to recover was the 10 percent of their loans represented by the amount of cash Raffold International then had on hand. In our opinion petitioners were unduly pessimistic. Patents which had been producing gross royalties of $3,436.11 and $4,972.44 in 1937 and 1938, and $5,328.60 during the period January 1 to October 16, 1939, do not ordinarily become worthless merely because a licensee announces that it is making some changes which will result in the avoidance of their use. The licensee never at any time notified Raffold International that it intended to discontinue permanently the use of the patents, and the letter of January 2, 1940, discloses that it had no intention of surrendering its license. Even if it had such an intention, this would not necessarily have been fatal to petitioners' chances of recovering in excess of 10 percent of their advances. There is no proof that other licensees could not have been obtained, or that Raffold International did not have a net worth in excess of the amount of its indebtedness. The balance sheet of December 31, 1939 shows *103 that even after disposing of practically all of its cash in connection with the December 15th, 1939, composition agreement, (assuming in this connection that the Canadian patents were only worth the $2,158.96 shown thereon), Raffold International still had assets in excess of liabilities (exclusive of capital stock) in the amount of $1,504.18. We are not convinced, however, that this amount was the true excess; for in our opinion $2,158.96 did not represent the true value of the Canadian patents. The book value of $2,158.96 did not equal the amount of the income received from the patents in any year from 1937 to 1942 inclusive. The patents had approximately twelve years of unexpired life, and, based upon their earnings record alone, were for aught that appears here, worth a substantial amount. Moreover, we think that it was then well within the realm of probability that a paper manufacturer would have made an attractive offer for the patents if Raffold International had indicated in 1939 that they were for sale. In the absence of evidence showing the real value of the patents, we cannot say that the indebtedness to the petitioners became worthless in 1939. Creditors cannot voluntarily *104 forgive a debt against a solvent debtor and then be heard to claim a deduction for a worthless debt. W. F. Taylor Co., 38 B.T.A. 551, 557. Petitioners have not proven that Raffold International was insolvent in 1939. Petitioners contend in the alternative that the difference between the amount of the advances made by them to Raffold International Corporation and the sums received as a result of the compromise agreement of December 15, 1939 are deductible as losses under Section 23 (f) of the Internal Revenue Code. This section allows the deduction by corporations of losses sustained during the taxable year and not compensated by insurance or otherwise. Petitioners state that this contention is made because of a statement of an employee of the Bureau of Internal Revenue that the bad debt deduction should be disallowed because all three corporations were owned by the same individual and should be treated as a single entity. Petitioners urge that if this theory is correct they are entitled to deduct the loss sustained by Raffold International when the European patents in which its funds were invested were forfeited. The fact that the stock of three corporations *105 is owned by the same individual does not justify the treatment of the three corporations as a single entity for tax purposes, in the absence of unusual and exceptional circumstances. No such circumstances are present here. Petitioners have failed to establish their right to the claimed deductions on either theory advanced by them. Decision will be entered for the respondent.